UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

**UNITED STATES OF AMERICA**

v.

**GREGORY GUERTIN,**
Defendant

Crim. No. 13-CR-40027-TSH

## GOVERNMENT'S SENTENCING MEMORANDUM

The United States moves the Court to sentence Mr. Guertin to 17 months of imprisonment, 24 months of supervised release to follow, restitution of $137,672.86 to the Internal Revenue Service and the United States Treasury, forfeiture to the extent charged in the information or agreed to in the plea agreement, and a $100 mandatory special assessment.

Since the Court has already heard many of the relevant facts and arguments while recently sentencing Mr. Guertin's co-conspirator, Danielle Pazi, the most fruitful way to discuss Mr. Guertin is by way of comparison to Ms. Pazi.

**I.     FACTS**

Both Mr. Guertin and Ms. Pazi worked at Citizens Bank.  Mr. Guertin's position carried more responsibility:  he was an assistant manager, at least a couple positions higher than Ms. Pazi.

Despite Mr. Guertin's higher corporate position, Ms. Pazi nevertheless recruited him to participate with her in a stolen identity refund fraud scheme.  During the scheme, Ms. Pazi relayed instructions to Mr. Guertin and profited from his participation. (The United States and Ms. Pazi agreed that this did not constitute sufficient supervision to receive an upward adjustment under U.S.S.G. § 3B1.1(c), but Probation and the Court disagreed.  That

1

disagreement is irrelevant to Mr. Guertin, since everyone agrees that Mr. Guertin did not supervise anybody else in the scheme, and nobody has suggested that Mr. Guertin qualifies for a downward adjustment for a mitigating role under 18 U.S.C. § 3B1.2.)

Mr. Guertin joined the scheme much later than Ms. Pazi. He participated for barely a month, having cashed or deposited 20 Treasury checks worth about $137,672.86. Ms. Pazi, by contrast, participated for about 14 months and was responsible for about 162 checks worth over $1.1 million. (Her figures include the checks she gave Mr. Guertin.) Both Mr. Guertin and Ms. Pazi ceased participating only when they were discovered.

As mentioned, the United States will move for a downward departure for Mr. Guertin, just as it did with Ms. Pazi. It will, however, seek a smaller departure for Mr. Guertin: only 30%, versus 45% for Ms. Pazi. The United States will explain why at the sentencing hearing. At this point, however, it is worth noting that the difference is not due to any failure of character, effort, or deed on Mr. Guertin's part.

II.     **SENTENCING GUIDELINE CALCULATIONS**

The parties have calculated Mr. Guertin's sentencing guidelines to yield a total adjusted offense level of 17 (after accounting for acceptance of responsibility), which, with criminal history category I, yields a sentencing range of 24 to 30 months of imprisonment. Probation reached the same conclusion.

Mr. Guertin has a much lower offense level and sentencing range than Ms. Pazi. They differ in four major aspects. First, Mr. Guertin's adjustment for loss is significantly lower than Ms. Pazi's, because she participated in the scheme for a much longer time and therefore caused substantially more harm. Second, Mr. Guertin's adjustment for the number of victims is lower, for the same reason. Third, Mr. Guertin does not qualify for the upward adjustment that the

Court and Probation gave Ms. Pazi for supervising Mr. Guertin. Fourth, Mr. Guertin was not assessed an upward adjustment for an offense involving means of identification, whereas Ms. Pazi was. (Parity would ordinarily require that Ms. Pazi and Mr. Guertin be treated equally with regard to the means-of-identification adjustment, but since the parties agreed that it should not apply to either defendant, the United States does not object to its omission here.)

### III.  SENTENCING RECOMMENDATION

The low end of Mr. Guertin's sentencing guideline range is 24 months. This would normally be an appropriate sentence for his crime. The reasons for a significant sentence of imprisonment here are the same reasons that the government outlined in Ms. Pazi's case: the crime consisted of a significant fraud; Mr. Guertin participated in it about 20 times, over the span of a month; a significant portion of the profits went into Mr. Guertin's pockets; Mr. Guertin committed the crime by taking advantage of his position of trust as a bank supervisor; and imprisonment is appropriate for purposes of deterring the general public, reflecting the seriousness of the offense, promoting respect for the law, and providing just punishment. As with Ms. Pazi, the United States is not concerned with specific deterrence; Mr. Guertin is unlikely to reoffend.

As mentioned above, at the hearing the United States will request a 30% downward departure. Its ultimate recommendation will therefore be 17 months of imprisonment.

Although this sentencing recommendation is significantly lower than the government's 31-month recommendation for Ms. Pazi, it is still higher than the 11-month sentence that Ms. Pazi received. Why is the United States recommending a higher sentence for Mr. Guertin when Ms. Pazi is more culpable than him? Because the extraordinary mercy shown Ms. Pazi was

intended to avoid her deportation and separation from her young children.  Mr. Guertin does not face that situation and therefore does not require that same mercy.

That said, the United States understands that 18 U.S.C. § 3553(a)(6) (requiring the court to consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct") may play a part in Mr. Guertin's ultimate sentence.

Respectfully submitted,

CARMEN M. ORTIZ
United States Attorney

*/s/ Scott L. Garland*
Scott L. Garland
Assistant United States Attorney

**CERTIFICATE OF SERVICE**

I hereby certify that this document is being filed through the ECF system and therefore will be sent electronically to the registered participants as identified on the Notice of Electronic Filing.

*/s/ Scott L. Garland*
Scott L. Garland
Assistant United States Attorney

Date: December 9, 2014