UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | ) ) ) | |
| V. | ) ) | CRIMINAL ACTION No. 13-CR-40027-TSH |
| GREGORY GUERTIN, Defendant | ) ) ) ) | |

DEFENDANT'S SENTENCING MEMORANDUM

NOW COMES the defendant, Gregory Guertin (hereinafter "Guertin"), through undersigned counsel, who respectfully notifies the Court that at the Sentencing Hearing scheduled for Tuesday, December 16, 2014 at 2:30 p.m., the defendant will be seeking to have the Court impose a Non-Guideline Sentence of two (2) years probation, with 36 months of supervised release, mandatory assessment of $100 and forfeiture.  For the reasons set forth below, defendant submits that a variance from the guidelines results in a sentence that is sufficient, but not greater than necessary, to comply with the purposes and factors set forth in 18 U.S.C. 3553(a).

I.
OVERVIEW

Guertin's participation in this conspiracy to cash fraudulently obtained income tax returns lasted for one month, in November of 2012, and his personal gain was $12,000. from 20 transactions at $600. per check, with his involvement totaling $137,672.86 in restitution.  His

1

participation ended soon after being lured in by co-employee Danielle Pazi.[1]  Guertin was fired and soon thereafter, on or about January of 2013, received a "target letter" from the government.

Guertin then sought appointment of counsel, signed a proffer letter, was interviewed, and agreed to act as an identified cooperator, putting himself and his family at substantial risk of harm.  He and counsel met several times with government agents before executing a plea agreement, waiving indictment and pleading guilty on December 17, 2013, to a one count Information alleging Conspiracy to Convert Public Money in violation of 18 U.S. C sec. 641.  Since his guilty plea a year ago, his sentencing has been held in abeyance while he continued to serve as a named cooperator assisting the government in the prosecution of the men who presented the checks to him where he worked at Citizen's Bank in Worcester.

When Guertin committed this crime two years ago he was in the midst of a divorce caused in part through financial troubles and insecurity.  He was vulnerable to the temptation of theft to help support his wife and 2 young boys, now aged 4 and 8 years old.  The "Government's Sentencing Memorandum" at bar inartfully compares Pazi's potential deportation and separation from young children, and suggests that "Mr. Guertin does not face that situation and therefore does not require that same mercy."

The government's argument not to extend such "extraordinary mercy" to Guertin is without merit, where Guertin remains the sole supporter providing child support to his now ex-wife (who is disabled from work with a blood clotting disorder) and 2 young boys.  He is newly married for 5 month and his work ethic and love of family and faith are readily apparent in the 13 letters of recommendation filed with this memorandum.  These letters paint a picture of a

---

[1] Pazi was sentenced on November 14, 2014 by the Hon. Timothy S. Hillman to 11 months prison with 2 years supervised release, restitution of $1,147,215.76 and $100. Special Assessment. Her sentence length protected her from mandatory deportation to Brazil.  Her guidelines were 57 to 71 months, with the government's recommended 45% downward departure reducing the low end to 31 months.  She

faith based young man who is laid back, hard-working, tortured with guilt, depression and anxiety (for which he has received treatment) and mission volunteer who stumbled in his walk with Christ. He has an enviable support network and has many redeemable qualities.

Guertin has no prior record of convictions, has zero criminal history points and the government is recommending that with a 30% downward departure, Guertin be sentenced to 17 months imprisonment. The Court would also have the authority to impose a sentence below that suggested by the advisory guidelines and as contemplated by the range set forth in the plea agreement.

**A SENTENCE OF TWO YEARS PROBATION WITH 36 MONTHS OF SUPERVISED RELEASE THEREAFTER, JOINT AND SEVERAL RESTITUTION OF $137,672.86 IS SUFFICIENT BUT NOT GREATER THAN NECESSARY TO ACHIEVE THE GOALS OF SENTENCING.**

Since United States v. Booker, 125 U.S. 738 (2005) and its progeny, District Courts are required to treat the advisory guidelines as just one of a number of sentencing factors set forth in 18 U.S.C. sec. 3553 (a) with an objective to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph 2." Applied to the facts of this case, Guertin's limited participation in the offense itself and his total lack of criminal history justify a variance from the sentencing guidelines.

**(a) Nature and Circumstances of the Offense and Guertin's History and Characteristics: Sec. 3553(a)(1).**

Guertin's personal circumstances and acceptance of responsibility are documented in the PSR. There is no evidence that he has obstructed justice. In fact, since receiving a target letter almost 2 years ago in January of 2013, he has proffered and cooperated with investigators, entitling him to receive at substantial assistance reduction.

---

participated in the scheme for 14 months and was responsible for 162 checks, including the 20 relating to Guertin. See, 4:13-cr-40029-TSH, Government's Sentencing Memorandum, p.2.

The nature and circumstances of the offense are as stated above and Guertin's history and characteristics are relevant to the Court's consideration of a variant sentence.  Under 18 U.S.C. 3661, "no limitation shall be placed on the information concerning the background, character, and conduct of (the defendant) which a court of the United States may receive and consider for purpose of imposing an appropriate sentence."  "A court may take family circumstances into account, at least to some extent, in fashioning a variant sentence."  See, e.g., <u>United States v. Grossman</u>, 513 F.3d 592 (6th Cir. 2008).

Guertin's participation in this conspiracy was a behavioral aberration, totally inconsistent with his home schooled educational background, career objectives and personal dreams.  He has been punished already by loss of employment and the blemish that this conviction will place upon his ability to secure employment and advancement in the future.  His family circumstances are also relevant towards fashioning a variant sentence, as his two (2) young children will be left without a stable source of financial support if he is incarcerated for any period of time.

He has been forthcoming about this incident to his present full-time employer at Verizon Wireless, as reflected in the reference letter of employer Ray Leung, who has known Guertin as Store Manager since September of 2013, and describes him as a man of integrity.

**(b) Seriousness of the Offense, To Promote Respect for the Law, and Provide Just Punishment for the Offense: Sec 3553(a)(2)(A).**

Defendant's offense is serious, but merits probation and supervised release instead of imprisonment. Gregory Guertin is an atypical federal defendant, without a drug or alcohol addiction fueling his crime, as is perhaps often witnessed by the Court.  He is a suitable candidate for probation and supervised release and the opportunity for redemption, as he has often expressed deep remorse and personal disappointment over his involvement in this matter.

The factors of defendant's respect for the law and just punishment for the offense should consider that since the time of his waiver of indictment and release to Pre-Trial Services, Guertin has been fully compliant with all conditions of his release. He was not arrested and detained, and this incident is the first time in his life that he has ever been exposed to being placed in custody. During the time of his pre-plea and post-plea release he maintained full-time employment as Store Manager at Verizon Wireless. His success at pre-trial and pre-sentencing release shows his respect for the law. He has proven himself as a suitable candidate for the just punishment of supervised release, or even electronic monitoring or home confinement.

**(c) The Need for the Sentence to Afford Adequate Deterrence to Criminal Conduct: Sec. 3553(a)(2)(B).**

Gregory Guertin's punishment will no doubt change his decision-making and perspectives on life. He has never had an addiction or been an abuser of drugs or alcohol. He is sincerely remorseful and ashamed that he is now a convicted federal felon who has brought embarrassment to his family and reputation. His current wife's letter describes his insomnia, guilt, depression and self-torture, unforgiving that he has disappointed so many people. Given the catastrophic results of his actions there is little doubt that his sentencing and continued supervision will provide constant deterrence to any thought of relapse or recidivism in the future. Guertin requests leave of Court to make allocution at sentencing in this and other regards.

**(d) Public Protection from Further Crimes of the Defendant: Sec. 3553(a)(2)(c).**

Gregory Guertin was not involved in crimes of violence and there were no specific victims harmed or injured by his criminal conduct, as indicated at p. 6 of the PSR, that the victims, "those who had their identity stolen, have not yet been identified by the government (and) it is not clear at this point, what losses, if any, the victims have suffered." Guertin's limited criminal history with no prior convictions indicates that public protection is not

genuinely at risk by his release. He has no criminal history and during the two (2) years of his cooperation, has demonstrated that he is more than capable of following rules and orders of the Court. There is no evidence that he is a danger to the public, and his pre-trial release without incident provides some evidence that he has already been deterred from future criminal activity. His lack of criminal history also demonstrates that he is less likely to recidivate than a more experienced or career offender.[2] Sentencing Guertin to supervised release will also protect the public as his conduct is monitored.

**(e) Effective Provision of Needed Educational or Vocational Training, Medical Care, or other Correctional Treatment in the most effective manner: Sec. 3553(a)(2)(D)**

Guertin has not used drugs or alcohol as confirmed by urine screens during the time of his supervised release. His total criminal history score is zero. PSR, p. 9, par. 42. Drugs and/or alcohol were never the driving force to his involvement as a conspirator, and it appears that his motivation was purely financial in an effort to confront his own poverty and inability to provide for his wife and children. His co-employee Pazi recruited Guertin into this conspiracy, and knew he was destitute and vulnerable to the temptation of larceny. Unlike Pazi, Guertin did not draw any others into the conspiracy, and he was the lowest level conspirator as compared to the related cases of Mildred Martinez, Cynthia Mansfield and Daniele Pazi, and other pending matters.

The Government's Sentencing Memorandum, at p. 2, notes that Guertin participated in the conspiracy for "barely a month, having cashed or deposited 20 Treasury checks worth about $137,672.86," while Pazi in contrast, "participated for about 14 months and was responsible for about 162 checks worth over $1.1 million." The government agrees that Guertin has a much lower offense level and sentencing range than Pazi, and that Guertin, unlike Pazi, does not

---

[2] See, e.g., Recidivism and the "First Offender": A Component of the Fifteen Year Report on the U.S. Sentencing Commission's Legislative Mandate, U.S. Sentencing Commission (May, 2004),http://www.ussc.gov/publicat/Recidivism_First Offender.

qualify for the upward adjustments that she received for her supervisory role and for an offense involving means of identification.

**(f)  The "kinds of sentences available" sec. 3553(a)(3) and the Suggested Guideline Sentencing Range and any pertinent policy statement, sec. 3553(a)(4) & (5).**

The guideline sentencing range is 24 to 30 months imprisonment based upon a Total Offense Level of 17.   A further downward departure pursuant to the seven factors of 18 U.S.C. sec. 3553(a)(1)-(7) would also be appropriate for the reasons as stated above.  In addition, the government has agreed that the proposed sentencing range set forth in the plea agreement is a reasonable and appropriate disposition of this case.

**(g) Unwarranted Sentencing Disparity, sec. 3553(a)(6).**

Guertin's proposed sentence of 2 years of probation and 36 months of supervised release is the result of a negotiated disparate plea agreement and cooperation in the unique circumstances of this case, and produces no unwarranted disparity in sentencing.  Co-defendant Pazi was sentenced to 11 months prison, but was involved in gross transactions almost 10 times the amount attributable to Guertin, and 14 times longer in duration of the scheme.  Guertin in contrast is the least culpable of the co-defendants involved in this matter.  A sentence as recommended above is more than appropriate to recognize the differing levels of culpability amongst the co-conspirators, while at the same time imposing a sentence that accurately reflects Guertin's lack of criminal history, minimal role adjustment, acceptance of responsibility, government request for a 30% downward departure and other factors relevant to receiving a variant sentence.

## CONCLUSION

For all of the above and foregoing reasons, the Court should adopt the terms proposed by the defendant in the plea agreement and impose a sentence of  two (2) years of

probation and a 36 month period of supervised release with $137,672.86 joint and several restitution, or home confinement, electronic monitoring, curfew and any other such conditions of supervised release as the Court deems appropriate and just in the circumstances.  Defendant requests that no fine be imposed, due to his inability to pay, and that the Court waive fees or costs in the circumstances of this action.  Defendant requests leave to address the Court at sentencing and leave to file documents late relevant to the sentencing hearing.

>  Respectfully submitted,
>
> THE DEFENDANT,
>
> GREGORY GUERTIN,
> By His Attorney,
>
> /s/ Daniel W. Cronin
> Daniel W. Cronin, Esquire
> One Exchange Place
> Worcester, MA  01608
> (978) 302-4321
> B.B.O. # 548200

DATED: December 15, 2014

## CERTIFICATE OF SERVICE ON DEFENDANT'S SENTENCING MEMORANDUM

I, Daniel W. Cronin, attorney for the defendant, hereby certify that the document entitled Defendant's Sentencing Memorandum was filed through the ECF system and will be sent electronically to the registered participants as identified in the Notice of Filing (NEF) and to Pre-Trial Services and the Probation Department by electronic mail on same date.

> /s/ Daniel W. Cronin
> Daniel W. Cronin, Esquire

DATED: December 15, 2014